## JOSEPH NELSON PLUMBING & HEATING SUPPLY CORPORATION v. McCREA, District Judge, et al.

Nos. 4222, 4223.   Decided December 13, 1924.   (231 Pac. 823.)

1. RECEIVERS—COURT HAS DISCRETION TO ORDER NEW SALE IN CASE OF MISUNDERSTANDING. The court in a receivership matter being satisfied that there was a misunderstanding among some of those bidding at the sale, it was in its discretion, if not its duty, to refuse to confirm the sale, and order a new sale, especially where a creditor guarantees a large advance bid.

2. PROHIBITION—SETTING ASIDE RECEIVER'S SALE BEING IN COURT'S JURISDICTION, PROHIBITION WILL NOT LIE. The court having power to set aside a receiver's sale for cause, setting it aside is not in excess of jurisdiction, so prohibition will not lie.

3. MANDAMUS—PROHIBITION—REASONS STATED BY COURT IN SETTING ASIDE RECEIVER'S SALE MUST BE ACCEPTED AS TRUE. The reasons stated by the court in setting aside a receiver's sale and ordering new sale must be accepted as true in proceedings in prohibition and mandamus against the court based on such acts as unauthorized.

4. PROHIBITION—SUFFICIENCY OF COURT'S REASONS FOR SETTING ASIDE RECEIVER'S SALE NOT DETERMINABLE ON PROHIBITION. Whether the court's reasons for setting aside receiver's sale and ordering new one are sufficient cannot be determined on prohibition, they, if insufficient, constituting mere errors of judgment, not reviewable in such proceedings.

5. MANDAMUS—COURT'S ERROR OF JUDGMENT IN SETTING ASIDE RECEIVER'S SALE, NOT REVIEWABLE ON MANDAMUS. The court, in setting aside receiver's sale and ordering new one, having acted for cause, necessarily exercised judgment and discretion, not reviewable on mandamus.

Original proceedings in prohibition and mandamus by the Joseph Nelson Plumbing & Heating Supply Corporation against *Hon. Wm. M. McCrea*, Judge, and the District Court of Salt Lake County, heard together as one proceeding.

APPLICATIONS DISMISSED.

See (1) 34 Cyc. pp. 323, 324; (2) 32 Cyc. p. 605; (3) 26 Cyc. pp. 480, 630; (4) 32 Cyc. p. 617; (5) 26 Cyc. pp. 188, 214.

*G. C. Buckle and Hurd & Hurd,* all of Salt Lake City, for plaintiff.

*Dey, Hoppaugh & Mark,* of Salt Lake City, for defendants.

FRICK, J.

The plaintiff, Joseph Nelson Plumbing & Heating Supply Corporation, commenced two separate proceedings in this court against the Hon. Wm. M. McCrea, as judge of the district court of Salt Lake county, Utah, and against the court. In the first proceeding plaintiff prayed for an alternative writ of prohibition against said court, and in the second one it prayed for an alternative writ of mandate. At the hearing in this court the two proceedings, by consent of the parties, were heard together as one proceeding, and we shall dispose of them in the same manner.

By the first proceeding plaintiff seeks to prohibit the district court from proceeding to again offer for sale the assets of an insolvent corporation for which a receiver had been appointed, and whose assets are in the hands of said receiver, and by the mandamus proceeding plaintiff asks that the district court be compelled to confirm the sale of the assets aforesaid on plaintiff's bid, and to issue an order to that effect. General demurrers to the applications and motions to quash the alternative writs were interposed, and both applications were submitted upon the demurrers and motions to quash.

The facts, so far as material to these proceedings, briefly stated, are that the assets of the insolvent corporation aforesaid were placed into the hands of a receiver, and he was ordered to sell the same. Notice of sale was duly published, and, pursuant thereto, certain bids were received. The district court, however, was not satisfied with the first bids, and refused to confirm, and ordered a resale. The assets were accordingly again offered for sale; notice of the sale being to the effect that "all or any part of the assets"

would be sold. When the assets were again offered for sale there were again a number of bids submitted, and it seems that the court invited and received bids in open court. A part of the assets being still in litigation, that part was sought to be segregated from the rest of the assets. There seems to have been some misunderstanding with regard to that matter by some of the bidders. The bids that were made were, however, made in two amounts; one amount covering all the assets, and a lesser amount covering all the assets except those in litigation. Plaintiff's bid did not include the assets in litigation, and, prima facie at least, was the highest bid offered for the nonlitigated assets. At all events, the court sold the assets, excepting those in litigation, to the plaintiff on its bid, and required it to pay $5,000 on the day of sale, and the remainder within a specified time. The plaintiff paid the $5,000 as ordered, and also paid to the receiver the remainder within the time specified by the court. Before the time had expired within which plaintiff was required to pay the remainder of its bid to the receiver, and before the money was actually paid, a creditor filed a protest to the confirmation of the sale on plaintiff's bid, and asked that the assets be again offered for sale. A hearing was had upon the protest aforesaid, and the protesting creditor agreed to guarantee a bid of at least $5,000 in excess of plaintiff's bid for the assets, if a resale were ordered. The district court accordingly vacated its order of sale and ordered the assets readvertised and resold, and to prevent that result plaintiff has instituted these two proceedings.

The proceedings had before the district court on the sales aforesaid have been made a part of the applications in this court. From those proceedings it appears that the district court stated its reasons for its refusal to confirm the sale on plaintiff's bid, and why it ordered the property resold. At the conclusion of the hearing, after all the parties had been heard, and after the whole matter was before it, in passing upon the protest aforesaid, the court said:

"I am not opening this because somebody is disappointed or dissatisfied. I am opening it because I am confident that there has been a misunderstanding and I don't care to assume the entire responsibility of rejecting what appears to be a better opportunity."

From the court's language but one conclusion is permissible, and that is that the court was not satisfied that all the bidders fully understood the terms upon which bids were made. In other words, that there was a "misunderstanding" with respect to that matter in the minds of at least some of the bidders. If such was the case, and, for the purposes of this decision, we must conclusively assume that it was; then it was, to say the least, within the discretion of the court whether it would confirm the sale on plaintiff's bid, or whether it would order the assets readvertised and resold. Indeed, as we view it, if the court was satisfied that there was a misunderstanding among the creditors, or among some of them, who were bidding, it was the duty of the court to again offer the assets for sale, and especially where, as here, the creditor guaranteed to advance the bid at least $5,000. While the mere inadequacy of the amount bid, standing alone, may not be an adequate cause for setting aside a sale, yet, where, as in this case, there is a misunderstanding among the creditors who desire to bid, it was the duty of the court to protect the best interests of all concerned. In such circumstances, as was well said in a similar case, *Magann* v. *Segal*, 92 F. 252-262, 34 C. C. A. 323:

"The equity of the owners and creditors, under the facts of this case, is greater than the equity of the purchasers to have this bid accepted."

The Supreme Court of Montana, in the case of *In re First Trust & Savings Bank*, 45 Mont. 89, 122 P. 561, Ann. Cas. 1913C, 1327, considered the question involved here with more than ordinary care. The conclusion arrived at by the court from an exhaustive review of the authorities is correctly reflected in the second and third headnotes as follows:

"A court of equity in receivership proceedings may set aside an order of sale either before or after confirmation, when it appears that the same was entered through mistake, inadvertence, or improvidence.

"A purchaser at a receiver's sale takes with notice that the court may, in its discretion, set the sale aside."

In the course of the opinion, in summing up, the court, at page 104, 122 P. 561, 567, further said:

"The function of a court of equity in cases like this is to have a vigilant eye to the interests of the beneficiaries of the trust which it has in charge. The main, in fact the only, consideration should be that the unfortunate creditors of the defunct bank and trust company shall realize the greatest possible amount from the disposal of its assets."

The case is annotated in Ann. Cas. 1913C, 1327, where the annotator, in stating the effect of the decisions, says:

"As a broad general proposition, a court of equity has jurisdiction to set aside a sale made by a receiver, either before or after confirmation, and the purchaser at such sale takes the property with notice that the court has power, in its discretion, to set it aside. See the reported case and the cases cited infra throughout the note. And although the parties and the court have given the receiver the widest latitude of discretion, if the court becomes advised that, either from mistake or other cause, the receiver is disposing of the property at a sacrifice, it becomes the duty of the court to stay his hand. *Horse Springs Cattle Co.* v. *Schofield*, 9 N. M. 136, 49 P. 954.

"The power, right, and duty of chancery courts to supervise sales ordered by their decrees, and made by their special officers, and to protect the parties from all fraud, mistake, unfairness and imposition, by setting aside such sales, is universally recognized and applied to sales made by receivers," citing cases.

It would be a mere work of supererogation to pursue the authorities further, or to review the many cases that are cited on behalf of the parties to these proceedings. Moreover, plaintiff's counsel concede that a court may set aside judicial or receiver sales, but they insist that it cannot do so except for cause. If it be once conceded that a court may set aside a sale for cause, then there is no escape from the conclusion that both of these proceedings must fail. So far as the prohibition proceeding is concerned we cannot go further than to inquire whether the district court acted within its jurisdiction. If it did, the application must fail. If it be conceded, therefore, that a court has the power to set aside a sale for cause, then the action of the court in setting aside the sale in question was

not, and could not have been, in excess of its power or juris-
diction. As already pointed out, the court stated its rea-
sons for its action. For the purpose of these proceedings
we must accept the court's reasons as being absolutely true.
We cannot, in these proceedings, review the court's acts
and determine whether they are supported by the evidence
or not. So far as we are concerned, the court's rea-
sons are conclusive. Nor can we, in these proceedings,      **3, 4**
determine whether the court's reasons were sufficient
or not. If they were not sufficient they constitute mere
error of judgment and it has become elementary that mere
errors of judgment cannot be reviewed in proceedings of
this nature. In any view that may be taken, therefore, the
district court acted within its powers and jurisdiction, and
therefore prohibition is not the proper remedy. The same
is true regarding mandamus. If the district court had the
right to exercise any discretion in the matter of setting aside
the sale, mandamus is not the proper remedy. If, therefore,
the court acted for cause, and the record before us is con-
clusive that it did, it must necessarily have exercised its
judgment and discretion in determining whether there was
adequate cause upon which to base its action. In determin-
ing that matter the court may have erred, but mere
errors of judgment, however gross, cannot be cor-        **5**
rected in a mandamus proceeding. That can be done
only on an appeal from a final judgment in the case.

From what has been said it necessarily follows that the
plaintiff has misconceived its remedy, and hence both the
application for prohibition and the application for man-
damus should be dismissed at plaintiff's cost. Such is the
order.

WEBER, C. J., and GIDEON and CHERRY, JJ., concur.

THURMAN, J., did not participate herein.